```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
MAMBU BAYOH,                             :
                                         :
                    Plaintiff,           :    18cv5820 (DLC)
                                         :
         -v-                             :    OPINION AND ORDER
                                         :
AFROPUNK FEST 2015 LLC, AFROPUNK LLC,    :
AFROPUNK GLOBAL INITIATIVE LLC,          :
MATTHEW MORGAN and JOCELYN COOPER,       :
individually,                            :
                                         :
                    Defendants.          :
                                         :
---------------------------------------- X
```

APPEARANCES

For the plaintiff:
Law Office of Robert L. Greener
Robert L. Greener
112 Madison Avenue, 6th Floor
New York, New York 10118

For the defendants:
Lewis Brisbois Bisgaard & Smith LLP
Brian Pete
Jonathan D. Goins
77 Water Street, Suite 2100
New York, New York 10005

DENISE COTE, District Judge:

Photographer Mambu Bayoh brought this lawsuit alleging copyright infringement by Afropunk LLC ("Afropunk"), its co-CEOs Matthew Morgan and Jocelyn Cooper, and related entities Afropunk Fest 2015 LLC and Afropunk Global Initiative LLC. Plaintiff asserts that the defendants used his photographs at music festivals during 2015 and 2016 in ways that exceeded the limited

permission he had given them.  Plaintiff filed copyright registrations for the photographs in 2017 and this lawsuit in 2018.  Defendants have moved for summary judgment.  For the following reasons, the defendants' motion is denied, except as to the related entities Afropunk Fest 2015 LLC and Afropunk Global Initiative LLC.

## Background

The following facts are undisputed or taken in the light most favorable to the plaintiff, unless otherwise noted.

I. Plaintiff's Relationship With Afropunk

Afropunk organizes a series of music festivals of the same name; the first Afropunk festival was held in 2005 in Brooklyn, New York.  Morgan is the founder of Afropunk and serves as its co-CEO along with Cooper, who supervises marketing and partnerships for the entity.  Afropunk hires photographers to shoot its festivals and thereby obtains images to use in future promotional materials.

In May 2015, an Afropunk employee emailed Bayoh, explaining that Afropunk was building a new website and would "love for some of [his] images to be featured."  Bayoh replied that he had "retained rights" to the images and would "require compensation for PR rights regarding [his] images."  Bayoh's reply was forwarded to Morgan, who suggested that they "jump on a call."

According to Bayoh, he gave Morgan permission to use only six photographs, and only on the website promoting the 2015 Afropunk festival.

In August 2015, Afropunk hired Bayoh to shoot its upcoming festival in Brooklyn. An Afropunk employee sent Bayoh an agreement that would have granted Afropunk "a worldwide, perpetual, irrevocable, royalty-free, sub-licensable right to exploit" any pictures that he took at the festival. Bayoh did not sign the agreement.[1] Bayoh did agree to participate in an "Instagram takeover," during which he would post images directly to Afropunk's Instagram[2] account. One of the requirements for participating in the Instagram takeover was that Bayoh submit forty to fifty images to Afropunk for use on the organization's Facebook page.

According to Bayoh, when he arrived at the Brooklyn Afropunk festival on August 22, 2015, he observed that his artwork was used in a variety of places -- on posters, on a

---

[1] Defendants assert that they believe Bayoh must have signed the license agreement, because it was Afropunk's routine practice to have photographers sign such an agreement. But the defendants have not produced a copy of the agreement signed by Bayoh. Viewing the facts in the light most favorable to the non-moving party, it is assumed for the purposes of summary judgment that Bayoh did not sign the agreement.

[2] Instagram is an application that allows users to upload and share images. See Instagram, Features (last visited Nov. 7, 2019), https://about.instagram.com/features.

booklet distributed to attendees, and on staff t-shirts. Bayoh took photographs during the festival and uploaded twenty-eight such images into a Dropbox[3] folder that Afropunk had access to. According to Bayoh, he conveyed his displeasure about the extent of the use of his images at the festival to Morgan and another Afropunk employee on August 23. Afropunk paid Bayoh $1,200 for his work at the 2015 Brooklyn festival.

During September 2015, an Afropunk employee reached out to Bayoh about photographing the Atlanta Afropunk festival. During September 21 and 22, Bayoh and Morgan exchanged emails in which Morgan expressed concern that Afropunk had not received as many images as it expected from Bayoh. On September 23, Bayoh uploaded eighty-seven images into a Dropbox account accessible by Afropunk. On September 24, Morgan sent a text message to Bayoh:

> I just asked Andrea to fill me in. She said you had agreed to flight and hotel but didn't want to give us use of the images which wouldn't work. I don't put restrictions on you and have opened up our resources and access to you[;] I don't want to feel like this is a one sided relationship. If we sold your images or made money from them other than using to boost your profile I'd understand so let me know if you think that [t]hats the case otherwise I'd like us to agree that this is our agreement and we will not go back and

---

[3] Dropbox is a service that allows users to upload files, access them remotely, and share them with others. See Dropbox, Features (last accessed Nov. 11, 2019), https://www.dropbox.com/features.

>forth each year as your profile grows and you forget us little people.
>
>Let me know if you want to come[;] I need to know today. Flight, hotel and $200. Same requirements as NY.

Bayoh never responded to this message, and there is no evidence that the Atlanta Afropunk festival actually occurred.

In the spring of 2016, Bayoh spoke to Whitney Richardson, an employee of the New York Times to whom Morgan had introduced Bayoh. After that conversation, Richardson emailed Morgan and relayed that Bayoh "was concerned on how his images were going to be used" and that "he wasn't comfortable with using his work for promo." Morgan responded indicating that he would not be receptive to any such complaint "until the images we paid for are placed in the place they should have been placed months ago."

In August of 2016, Bayoh contacted Morgan and requested a photographer's pass to the 2016 Brooklyn Afropunk festival. Morgan declined to provide one, but Bayoh bought a ticket and attended the 2016 festival nonetheless. According to Bayoh, he again observed various uses of his photographs -- on posters, on directional signs, on a smartphone application for festival attendees, on Afropunk's social media, and in Afropunk's email communications.

II. Plaintiff's Copyright Registrations

None of Bayoh's photographs had been registered with the U.S. Copyright Office prior to the 2015 or 2016 festivals. He first filed an application for copyright registration in June 2017, seeking a group registration of thirteen photographs collectively entitled "By such and such." During the application process, Bayoh indicated that the "By such and such" photographs were completed in 2013 and first published on April 7, 2013. But during his deposition Bayoh testified that some of the photographs were not in fact taken until 2014 or 2015. After checking the metadata on the photographs, Bayoh submitted an errata sheet to his deposition transcript indicating that the photographs were all taken in 2014 or 2015 and that he had filed a supplemental registration with the Copyright Office amending the "By such and such" publication date to 2015.

In July 2018, Bayoh received a second copyright registration, for a group of fifteen photographs entitled "By Such and Such II." The "By Such and Such II" certificate of registration indicates that the photographs were completed in 2015 and published on December 1, 2015. Bayoh now acknowledges, after reviewing these photographs' metadata, that some were created in 2014. According to Bayoh, in August 2019 he filed for supplementary registrations to correct the dates of

6

completion and publication for both "By such and such" and "By Such and Such II."

III. Procedural History

Bayoh filed this lawsuit on June 27, 2018. At an October 26, 2018 conference, defendants' motion to dismiss the plaintiff's claims for unfair competition and for statutory copyright damages and attorneys' fees was granted.[4] Remaining, therefore, is the plaintiff's copyright infringement claim for actual damages or the defendants' profits attributable to infringement. On August 30, 2019, Afropunk moved for summary judgment. The motion became fully submitted on October 4.

**Discussion**

I. Summary Judgment Standard

Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the non-moving

---

[4] Recovery of statutory damages and attorney's fees is barred because no infringement is alleged to have commenced after Bayoh's photographs were registered with the Copyright Office, and registration did not occur until more than three months after the photographs' publication. See 17 U.S.C. § 412; Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 158-59 (2d Cir. 2007).

7

party." Smith v. Cnty. of Suffolk, 776 F.3d 114, 121 (2d Cir. 2015) (citation omitted). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. See Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992); Gemmink v. Jay Peak Inc., 807 F.3d. 46, 48 (2d Cir. 2015).

Once the moving party has made a showing that the non-movant's claims cannot be sustained, the party opposing summary judgment "must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted). Only disputes over material facts will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

II. The Validity of Plaintiff's Copyright Registrations

The defendants seek dismissal of this action on the ground that the plaintiff's copyright registrations are invalid. A copyright owner may not bring a claim for infringement until the work allegedly infringed has been registered with the Copyright Office. 17 U.S.C. § 411(a); Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881, 886 (2019). "Upon registration of the copyright, however, a copyright owner can recover for infringement that occurred both before and after registration." Fourth Estate Pub. Benefit Corp., 139 S. Ct. at 886-87. A certificate of registration issued by the Copyright Office satisfies this requirement

> regardless of whether the certificate contains any inaccurate information, unless -- (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(1).

If "inaccurate information" described under § 411(b)(1) is alleged, then "the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." Id. § 411(b)(2). The Second Circuit has not addressed the circumstances under which a

9

district court must make such a request.  Other courts, however, have observed that the language of § 411(b)(2) is mandatory, meaning that a court may not find a copyright registration to be invalid due to inaccurate information in the certificate without first consulting the Copyright Office about the materiality of the inaccuracy.  See DeliverMed Holdings, LLC v. Schaltenbrand, 734 F.3d 616, 624 (7th Cir. 2013) (finding it error to invalidate a copyright registration without consulting the Copyright Office, even though neither party had raised the possibility of a referral); King-Devick Test Inc. v. NYU Langone Hosps., No. 17cv9307 (JPO), 2019 WL 3071935, at *7 (S.D.N.Y. July 15, 2019) ("[A] court may not hold that this exception applies without first seeking input from the Copyright Office."); Palmer/Kane LLC v. Rosen Book Works LLC, 188 F. Supp. 3d 347, 348 (S.D.N.Y. 2016) ("[C]ourts are in agreement that the provision is mandatory in nature, requiring district courts to solicit the advice of the Copyright Office when the statutory conditions are satisfied.").

The Copyright Office has offered the following suggestion about how the referral provision should operate:

> While 17 U.S.C. § 411(b)(2) requires the court to seek the Register's advice when there is an allegation that an application contains inaccurate information, the Register observes that the statute says nothing about the timing of the request.  The Register suggests that, at a minimum, the court retains the power to

10

> delay the request until a factual record has been developed, e.g., through affidavits or discovery. The Register believes that if a court concludes that the bare allegations are unsupported by any facts, the court would be free to refrain from issuing requests to the Register.

Response of the Register of Copyrights at 11, <u>Olem Shoe Corp. v. Wash. Shoe Corp.</u>, No. 09cv23494 (PCH) (S.D. Fla. Oct. 14, 2010), ECF No. 209; <u>see also</u> <u>DeliverMed</u>, 734 F.3d at 625.

Here, the defendants did not assert that Bayoh included inaccurate information in his applications for copyright registration until the filing of their motion for summary judgment. Even now, the defendants do not seek a referral to the Copyright Office for advice concerning whether it would have refused registration if the true completion and publication dates of Bayoh's photographs were known. Instead, the defendants argue that Bayoh's errors concerning the dates render his copyright registrations "invalid" and thus inadequate to satisfy the § 411(a) registration requirement for bring suit.

The defendants' request to invalidate Bayoh's registrations is denied. Section 411(b)(2) does not allow a court to find that a certificate of copyright registration is invalid on the basis of inaccuracy without first making a referral to the Copyright Office. Having waited until the close of discovery to attack the validity of the plaintiff's copyright registrations,

11

the defendants must point to some evidence that the registrations were obtained through knowing misrepresentations.[5]

Applying that standard here, the Court finds that no referral to the Copyright Office is appropriate. The defendants have provided no evidence that Bayoh knew that the completion and publication dates he provided with his applications were inaccurate on the dates of submission. Bayoh asserts that he made an innocent error. Defendants have provided no controverting evidence. His registrations are therefore sufficient for him to bring suit under § 411(a) and this litigation need not be delayed to accommodate a referral to the Copyright Office.

III. The Scope of Defendants' License

Defendants argue that Bayoh granted them a license to use his photographs, and thus any liability is limited to damages for breach of contract rather than infringement. But "when a

---

[5] See 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.20 (2019) ("[T]o avoid dilatory tactics, some courts refuse to refer the matter out, absent a sufficient factual allegation by defendant that plaintiff actually violated § 411(b)(1)." (citation omitted)); William F. Patry, Patry on Copyright § 17:125.50 (Sept. 2019) ("[H]ow does one in good faith allege knowledge of misleading the Office without some sort of evidentiary basis provided to the court?"); Douglas W. Kenyon & D. Alan Rudlin, Business and Commercial Litigation in Federal Courts § 100:31 (Robert L. Haig, ed., 4th ed. Nov. 2019) ("Section 411(b)(2) issues should be addressed early in the litigation . . . .").

license is limited in scope, exploitation of the copyrighted work outside the specific limits constitutes infringement." Spinelli v. Nat'l Football League, 903 F.3d 185, 202 (2d Cir. 2018) (citation omitted); see also Bourne v. Walt Disney Co., 68 F.3d 621, 631 (2d Cir. 1995). Therefore, a license only provides a defense to infringement insofar as the "licensee uses the copyright as agreed with the licensor." Universal Instruments Corp. v. Micro Sys. Eng'g, Inc., 924 F.3d 32, 40 (2d Cir. 2019).

"[N]onexclusive licenses may be granted orally, or may even be implied from conduct." Graham v. James, 144 F.3d 229, 235 (2d Cir. 1998) (citation omitted). The existence of a license constitutes an affirmative defense to infringement, and thus the burden to prove the existence of a license is on the licensee. Id. at 236. But "when the contested issue is the scope of a license, rather than the existence of one, the copyright owner bears the burden of proving that the defendant's copying was unauthorized under the license." Id.; see also Universal Instruments Corp., 924 F.3d at 40; Reynolds v. Hearst Commc'ns, Inc., No. 17cv6720 (DLC), 2018 WL 1229840, at *3 (S.D.N.Y. Mar. 5, 2018).

Here, it is undisputed that Bayoh gave the defendants a license in 2015 to use some of his photographs. There is,

however, a genuine dispute concerning the scope of the license: Defendants say Bayoh gave them an unlimited license, while Bayoh says he licensed certain photographs to be used on Afropunk's 2015 festival website and Instagram page only. Given the conflicting evidence, the scope of the license cannot be resolved on summary judgment.

Defendants rely on Graham v. James for the proposition that "[a] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." 144 F.3d at 236. But, a licensee who exceeds the scope of the granted license can be liable for infringement. Spinelli, 903 F.3d at 202.

IV. Equitable Estoppel

Defendants next argue that Bayoh's lawsuit is barred by equitable estoppel. It is helpful at the outset to distinguish the doctrine of equitable estoppel from the doctrine of laches. The defense of laches is available when the plaintiff has engaged in "unreasonable, prejudicial delay in commencing suit." Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 667 (2014). Laches is unavailable as a defense to a copyright infringement suit that is brought within the three-year statute of limitations for such actions. Id. Equitable estoppel, on the other hand, is available as a defense when "(1) the party [to be

14

estopped] makes a misrepresentation of fact to another party with reason to believe that the other party will rely on it; [and] (2) the other party relies on the misrepresentation to his detriment." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 292 (2d Cir. 2002); see also Petrella, 572 U.S. at 684-85 (noting that untimeliness is the essential element of laches, while the elements of equitable estoppel are intentionally misleading conduct and detrimental reliance).

Defendants prefer a formulation of the equitable estoppel doctrine that originated in the Ninth Circuit and has been quoted in one summary order of the Second Circuit:

> [A] copyright defendant invoking equitable estoppel must show that: 1) the plaintiff had knowledge of defendant's infringing acts, 2) the plaintiff either intended that defendant rely on his acts or omissions or acted or failed to act in such a manner that defendant had a right to believe that it was intended to rely on plaintiff's conduct, 3) the defendant was ignorant of the true facts, and 4) the defendant relied on plaintiff's conduct to its detriment.

Dallal v. The New York Times Co., No. 05-2924, 2006 WL 463386, at *1 (2d Cir. Feb. 17, 2006) (summary order) (citing Hampton v. Paramount Pictures Corp., 279 F.3d 100, 104 (9th Cir. 1960)); see also Zuma Press, Inc. v. Getty Images (US), Inc., No. 16cv6110 (AKH), 2019 WL 316001, at *1 (S.D.N.Y. Jan. 24, 2019); William F. Patry, Patry on Copyright § 20:58 (Sept. 2019). The

15

Court assumes for the purpose of analysis that this is the proper standard.[6]

Bayoh has presented sufficient evidence to raise a genuine dispute of material fact about the second element -- whether he intended that the defendants rely on his acts or omissions or acted or failed to act in such a manner that permitted the defendants to believe that they were intended to rely on his conduct. According to Bayoh, he placed limitations on the license that he was granting to the defendants and repeatedly raised objections to the defendants' more expansive use of his photographs. This is sufficient to create a genuine dispute about whether Bayoh is equitably estopped from asserting infringement.

Defendants argue that because Bayoh placed his photographs in a Dropbox account that they could access, never sent them a cease and desist letter, and did not bring this lawsuit until 2018 that they were misled into thinking they were authorized to

---

[6] Other authorities suggest that equitable estoppel may require a more specific showing. See Petrella, 572 U.S. at 684 (estoppel available when "a copyright owner engages in intentionally misleading representations concerning his abstention from suit"); Marvel Characters, Inc., 310 F.3d at 292 (estoppel available when a copyright owner makes a "misrepresentation of fact to another party with reason to believe that the other party will rely on it"). It is unnecessary to determine the proper standard here as the defendants are not entitled to summary judgment even on their preferred formulation.

16

use his photographs. But on the present record a reasonable jury could credit Bayoh's version -- that he clearly communicated his displeasure about the extent of Afropunk's use of his photographs and the defendants therefore had no right to believe that they were entitled to continued use.

V. The Statute of Limitations

Defendants argue that Bayoh's claims should be dismissed as untimely. Claims for copyright infringement must be brought within three years after they accrue. 17 U.S.C. § 507(b); Petrella, 572 U.S. at 671. This suit was brought on June 27, 2018. Summary judgment is therefore proper on any claims that accrued prior to June 27, 2015.

"[A]n infringement claim does not 'accrue' until the copyright holder discovers, or with due diligence should have discovered, the infringement." Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 124 (2d Cir. 2014). Here, there is no evidence to suggest that Bayoh should have discovered the alleged infringement prior to attending the Brooklyn Afropunk festival on August 22, 2015. None of the claims at issue are time-barred.

VI. Claims Against Particular Defendants

Defendants seek summary judgment on the claims against Afropunk Fest 2015 LLC and Afropunk Global Initiative LLC. It

17

is undisputed that these entities were not involved in the alleged infringement. Defendants' motion is therefore granted as to these entities.

Defendants also seek summary judgment on the claims against Jocelyn Cooper, who has submitted a declaration asserting that she does not make any decisions concerning Afropunk's use of photographs. Persons who are not the primary infringers may nonetheless be liable for contributory infringement or vicarious infringement. "A person infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." Spinelli, 903 F.3d at 197 (citation omitted). Vicarious liability is available against a defendant who had the "right and ability to supervise" the direct infringer and "an obvious and direct financial interest in the exploitation of copyrighted materials." EMI Christian Music Grp., Inc. v. MP3tunes, LLC, 844 F.3d 79, 99 (2d Cir. 2016) (citation omitted). It is undisputed that Cooper is co-CEO of Afropunk and oversees its marketing and sponsorship activities.[7] Defendants have not shown

---

[7] The plaintiff has also provided (1) a declaration from an Afropunk employee asserting that Cooper was familiar with Bayoh's work and (2) emails related to festival photography on which Cooper was cc'ed.

18

an absence of a genuine issue of material fact as to whether Cooper may be vicariously liable for Afropunk's alleged infringement.

## Conclusion

Defendants' August 30, 2019 motion for summary judgment is denied, except as to defendants Afropunk Fest 2015 LLC and Afropunk Global Initiative LLC.

Dated: New York, New York
January 15, 2020

```
                              _____
                              DENISE COTE
                              United States District Judge
```