```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
MAMBU BAYOH,                         :
                                     :
                     Plaintiff,      :      18cv5820
                                     :        (DLC)
          -v-                        :
                                     :      OPINION AND
AFROPUNK LLC, MATTHEW MORGAN and     :        ORDER
JOCELYN COOPER, individually,        :
                                     :
                     Defendants.     :
                                     :
------------------------------------ X
```

APPEARANCES

For plaintiff Mambu Bayoh:

Robert Leslie Greener
Robert L. Greener, Law Office
112 Madison Avenue, 6th Floor
New York, NY 10118

For defendants Afropunk LLC, Matthew Morgan, and Jocelyn Cooper,
individually,

Jonathan D. Goins
Brian Pete
Devin S. Cohen
Lewis Brisbois Bisgaard & Smith LLP
77 Water Street
21st Floor
New York, NY 10005

DENISE COTE, District Judge:

     Plaintiff Mambu Bayoh is a photographer and has sued

Afropunk LLC ("Afropunk") and its employees Matthew Morgan and

Jocelyn Cooper (collectively, "Defendants") for copyright

infringement.  Bayoh asserts that their use of 28 of his

copyrighted photographs in connection with the promotion of Afropunk music festivals exceeded the limited license he had given Afropunk.

The Defendants have moved to exclude trial testimony from the plaintiff's two damages experts.  One expert, Robert Wallace, conducted a survey to confirm his own opinion that Bayoh's photographs are distinctive.  The other expert, Weston Anson, offers a calculation of the Defendants' profits from all of its music festivals over a four-year period and of the value of Afropunk's brand.  Based on this expert testimony, Bayoh seeks to recover over $17 million from the Defendants.  For the reasons stated below, the Defendants' motion to exclude the testimony of the plaintiff's two experts is granted.

## Background

Afropunk produces music festivals in the United States and abroad.  It is undisputed that in 2015, Afropunk paid Bayoh $1,200 for photographs to be used in connection with Afropunk's Brooklyn, New York festival.  Bayoh contends that the photographs he gave to Afropunk were to be used only on the website promoting the 2015 Afropunk festival and on Afropunk's Instagram account.  Despite that understanding, Afropunk used the photographs in its marketing materials at Afropunk's festival and online.

Bayoh registered the photographs at issue with the Copyright Office in June 2017 and July 2018.  He amended those registrations in August 2019.

Bayoh filed this lawsuit on June 27, 2018.  An Opinion of January 15, 2020 granted in part the Defendants' motion for summary judgment, Bayoh v. Afropunk Fest 2015 LLC, No. 18CV5820 (DLC), 2020 WL 229978, at *1, *7 (S.D.N.Y. Jan. 15, 2020) ("Opinion").  The Opinion is incorporated by reference and familiarity with it is assumed.

Trial is scheduled to begin on November 2, 2020.  On October 16, 2020, the Defendants filed a motion in limine to exclude the testimony of Bayoh's expert witnesses.  That motion became fully submitted on October 23.  A summary of the expert reports of the two witnesses follows.

I.   The Wallace Report

Bayoh's expert Robert Wallace is an experienced brand consultant and the Managing Partner of Best of Breed Branding Consortium.  Wallace examined photographs that Bayoh provided to AfroPunk in 2015 and found them to be "distinctive," "consistent" and "compelling".  In his report, dated August 28, 2019, Wallace opined that the photographs Afropunk had previously used for marketing were "much less effective" and that the photographs it used after having had the benefit of

3

Bayoh's work were "strongly influenced" by and have the "look and feel" of Bayoh's photographs.

Wallace designed and oversaw an online consumer survey "to validate" his opinions.  Wallace defined the "proper universe" of survey participants as individuals who had recently attended "African-American cultural events and purchased or had direct influence in purchasing tickets for these events."  200 such survey respondents were equally divided into two groups.  100 respondents were shown Bayoh's photographs from Afropunk's marketing materials, while the other 100 viewed photographs from Afropunk's marketing before it obtained Bayoh's photographs.

The respondents were told that the photographs were "the brand identity for an upcoming event," and were asked whether they were more likely to attend "based exclusively on this imagery."  They were also asked how much the photographs influenced their decision to purchase tickets to "other related events supported by the Afropunk brand."  Finally, they were asked how much the photographs encouraged them "to purchase merchandise or other products from companies that identify with or use these images to market their goods."  After each of the questions, the respondents were asked to rate their responses on a five-point scale and then asked an open-ended question, such as "[w]hy do you say that?"

4

The respondents favored Bayoh's photography over Afropunk's previously used photographs.  88% of respondents indicated that Bayoh's photography caused them to be more interested in attending an upcoming event, while 74% reported that the non-Bayoh photographs caused them to be more interested in an event. Similarly, 71% of respondents found that Bayoh's photographs increased their interest in attending Afropunk events, while 51% of respondents who had viewed the non-Bayoh photographs reported the same.  Finally, 89% of respondents reported that Bayoh's photographs encouraged them to purchase merchandise, while 68% of respondents who viewed the non-Bayoh photographs reported the same.

Accepting Bayoh's assertion that Afropunk betrayed his trust, Wallace concludes that Afropunk willfully violated marketing industry best practices and ethical standards and willfully infringed Bayoh's intellectual property rights.  He concludes that Bayoh's photography style is "highly unique, recognizable" and protectable intellectual property.  Wallace opines that "a portion" of the Afropunk brand success "is derived directly from its identity and core visual message created by Mr. Bayoh's photography," and Bayoh's "photography has generated significant financial value to the Afropunk brand."

II.  The Anson Report

Bayoh's expert Weston Anson is the Chairman of CONSOR, a consulting firm that specializes in trademark, patent and copyright "monetization, valuations, and expert testimony." Bayoh asked Anson "to value the unjust enrichment" of the Defendants and "the corresponding growth of the Afropunk festival brand between the years of 2015 and 2018."  The Anson Report, dated August 29, 2019, concludes that Bayoh is entitled to $17,447,718 in damages: $13,014,945 for the unjust enrichment claim and $4,432,773 for the increase in Afropunk's brand value.

To determine the value of Bayoh's unjust enrichment claim, the Anson Report calculated Afropunk's revenue and expenses from all of its festivals held during the four years from 2015 through 2018.  These festivals included those held in Paris, London and Johannesburg.  Those calculations reflected a net loss in three of the four years.

Anson then recalculated a net profit figure by subtracting only the expense category labeled "talent, venue, production." This recalculation ignores those expenses labeled "other costs of operation".  The recalculation results in a net profit figure for each of the four years, and a total net profit for those years of $13,014,945.  Anson justified his decision to ignore the "other costs of operation" by reasoning that as a going

6

concern, the Afropunk festival is likely profitable and that this category of expenses likely includes salary expenses.

To calculate the value of Afropunk's brand, the Anson Report estimated the price at which a business would license its own intellectual property in an arms-length transaction. Drawing from an industry-wide report, the Anson Report uses just over 6% as a historical royalty rate for intellectual property. The Anson Report then multiplies Afropunk's annual revenues by the royalty rate to determine a hypothetical royalty charge for the year 2015 and the year 2018. Applying further calculations, Anson concludes that Afropunk's 2015 brand value was $1,896,334, and its 2018 brand value was $6,329,107. Following further calculations, the Anson Report concludes that Afropunk's brand value increased by $4,432,773 during the period from 2015 to 2018.

Bayoh submitted a supplemental expert report by Anson ("Supplemental Anson Report"), dated October 14, 2020, to amend the Anson Report in two important respects. It replaces the term "Unjust Enrichment" with "Profit Disgorgement" and the term "Increase in Brand Value" with "Actual Damages."

## Discussion

Bayoh has brought a copyright infringement claim under 17 U.S.C. §§ 106 and 501. Because Bayoh did not timely register

his photographs with the Copyright Office, he may not obtain statutory damages for any infringement he is able to establish at trial.  Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 158 (2d Cir. 2007); Bayoh v. Afropunk Fest 2015 LLC, No. 18CV5820 (DLC), 2020 WL 229978, at *3 n.4 (S.D.N.Y. Jan. 15, 2020).[1]  As a result, Bayoh's damages are limited to his actual damages and disgorgement of the Defendants' profits.  Under § 504(b), a copyright owner may recover "actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."  17 U.S.C. § 504(b).

An award of actual damages allows recovery of "the fair market value of a license covering the defendant's infringing use."  On Davis v. The Gap, Inc., 246 F.3d 152, 172 (2d Cir. 2001).  The award "looks at the facts from the point of view of the copyright owner; it undertakes to compensate the owner for any harm he suffered by reason of the infringer's illegal act."  Id. at 159.

An award of the infringer's profits "examines the facts only from the infringer's point of view.  If the infringer has

---

[1] For this same reason, Bayoh may not recover attorneys' fees. 17 U.S.C. § 412.

earned a profit, this award makes him disgorge the profit to insure that he not benefit from his wrongdoing." Id. "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). "[T]he term 'gross revenue' under the statute means gross revenue reasonably related to the infringement, not unrelated revenues." Davis, 246 F.3d at 160. The term "should not be construed so broadly as to include revenue from lines of business that were unrelated to the act of infringement." Id.

To support his claims for actual damages and the Defendants' profits, Bayoh seeks to offer at trial expert testimony from Wallace and Anson. The admissibility of expert testimony is governed by Federal Rule of Evidence 702. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence.  United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007).  The testimony must be relevant, and it must rest on a reliable foundation.  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993); Williams, 506 F.3d at 160.  An expert's opinion is relevant if it will "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702; see Daubert, 509 U.S. at 591.  Expert testimony that invades the province of the fact finder, however, must be excluded.  United States v. Lumpkin, 192 F.3d 280, 289 (2d Cir. 1999).

An expert's opinion must have "a reliable basis in the knowledge and experience of his discipline."  Daubert, 509 U.S. at 592.  A court should consider "the extent to which the expert's theory has been subjected to peer review and publication, whether the technique is subject to standards controlling the technique's operation, the known or potential rate of error, and the degree of acceptance within the relevant

scientific community." United States v. Ulbricht, 858 F.3d 71, 116 n.50 (2d Cir. 2017) (citation omitted).  This "Daubert reliability assessment" is a "flexible" inquiry, however, and "Daubert is not a definitive checklist or test for the reliability of expert testimony."  Id. (citation omitted). "[W]hether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the [court] broad latitude to determine."  Id. (citation omitted).

A court must "assess whether the expert employs the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Restivo v. Hessemann, 846 F.3d 547, 577 (2d Cir. 2017) (citation omitted).  Expert testimony should be excluded if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith."  Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 213–14 (2d Cir. 2009) (citation omitted).  Moreover, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

To be admissible, an expert's analysis must be reliable "at every step."  Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002).  "[A]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible."  Id. (emphasis omitted).

Expert testimony must also meet the requirements of Federal Rule of Evidence 403.  The Rule provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

I.    Wallace

The Defendants argue that Wallace's testimony should be excluded because Wallace is not qualified to render an expert opinion in a copyright case, his opinions do not comply with the standards under either Daubert or Federal Rule of Evidence 403, and his survey contains too many errors to be admissible.

Some of the opinions proffered by Wallace must be excluded as improperly invading the province of the jury as the judges of the facts.  These include his characterizations of the Defendants' intent and conduct and conclusion that the Defendants violated Bayoh's intellectual property rights.  Other opinions are offered without an adequate showing that he

12

possesses the requisite expertise to be a reliable witness on
the subject.  Yet other testimony he seeks to present at trial
must be excluded as irrelevant and, pursuant to Rule 403, as
likely to mislead and confuse the jury.  These include, for
example, Wallace's claim that the Defendants violated marketing
industry standards and that the Defendants betrayed Afropunk's
stated mission.[2]

As relevant to the issue of damages, it appears that
Wallace is offered to support an award of the Defendants'
profits to Bayoh.  To that end, Wallace opines that Afropunk's
brand was enhanced by the unique nature of Bayoh's photographs
and that those photographs therefore contributed to "a portion"
of Afropunk's success as a brand and provided it with
"significant" value.  Wallace does not seek to quantify that
value.

Wallace's opinions on the issue of damages must be
stricken.  He has not applied any methodology or discipline to
reach these opinions.  There is a complete absence of evidence
to establish causality.  He has not, for instance, studied the
extent to which Bayoh's photographs were used in marketing a

---

[2] These opinions appear to be collateral to the purpose for which
Bayoh has identified Wallace as an expert witness.  Plaintiff's
counsel has represented that Wallace is not offering opinions on
liability.

particular Afropunk festival or the extent to which those photographs contributed to the revenues of that festival (as opposed to other marketing materials or the popularity of the festival performers).  Nor has he attempted to distinguish between any impact from the licensed use of Bayoh's photographs and any allegedly unlicensed use.

Without linkage to an admissible opinion concerning causality and damages, Wallace's survey evidence is irrelevant.[3] Bayoh has enforceable copyright interests in his photographs, whatever their quality.  Those rights are not more enforceable because either Wallace or the survey participants found the photographs to be particularly compelling.  Nor does the survey fill the evidentiary gap regarding causation.  As Wallace admits, it was conducted only to validate his view that the Bayoh photographs he showed survey participants were more engaging than the other photographs he showed them.  As a consequence, it is unnecessary to address the Defendants' arguments that the survey methodology was too deficient to create reliable evidence even on the topics to which it was addressed.

---

[3] The survey design suggests concern with issues more commonly reached in trademark than in copyright cases.

In opposition to this motion to preclude Wallace's
testimony, Bayoh explains that Wallace is offered to show that
Bayoh's "works were so unique and compelling that Defendants
basically used the photographs as the branding for their
festivals from 2015 to 2018 resulting in increased attendance
and ticket sales for Afropunk's festival[s]."  He admits,
nevertheless, that it is his burden to show how the infringing
use of his photographs led to increased ticket and merchandise
sales.  He adds that surveys can be used in copyright and not
just trademark cases.  He explains that the survey of
respondents' mental impressions of the photographs that they
viewed was useful to show the impact those photographs "would
have on a decision to purchase a ticket to the Afropunk
festival."

None of these arguments addresses the fundamental problem
with Wallace's testimony.  Simply because Wallace and the survey
respondents found certain Bayoh photographs to be more
compelling than certain other photographs that Afropunk had
used, Wallace opines that Afropunk's use of those photographs
provided it with "significant" value.  These ipse dixit
assertions are inadmissible.  Wallace has not applied any
rigorous analysis or methodology to arrive at his opinion or
provided a fact finder with any means to measure the impact of

Bayoh's photographs on Afropunk's revenues.  As Bayoh acknowledges, it is the plaintiff's burden to show causation. His opinions and evidence invite the jury to speculate on what impact Bayoh's photographs might have had on Afropunk's revenues from a festival and are stricken pursuant to Rules 702 and 403, as well as the principles established in <u>Daubert</u> and its progeny.

    II.  Anson

    The Defendants also move to exclude Anson's testimony. They argue that his testimony is irrelevant without evidence of causation, which he does not purport to offer.  They also contend that his testimony is not based on either reliable data or a reliable methodology and does not address any valid form of copyright damages.

    There are many flaws in Anson's analysis that make it unreliable and inadmissible.[4]  It is sufficient to describe three

---

[4] Anson's analyses have been excluded by other courts as well. <u>See, e.g.</u>, <u>Malletier v. Dooney & Bourke, Inc.</u>, 525 F. Supp. 2d 558, 573 (S.D.N.Y. 2007) ("In light of the number of serious flaws that plague Mr. Anson's report and testimony . . . the probative value is substantially outweighed by the prejudicial effect and the serious potential to mislead the jury."); <u>Olive v. Gen. Nutrition Centers, Inc.</u>, 30 Cal. App. 5th 804, 820 (2018) ("Anson's opinion hinged on hypothetical conjecture about GNC's profits attributable to Olive's image and would not have reasonably assisted the jury . . . . [T]here was simply too great an analytical gap between the supposed data relied on by Anson and the opinion proffered.").

of them.  First, Anson improperly included extraterritorial
revenues in his calculations.  Second, in seeking an award of
Defendants' profits as calculated by Anson, the plaintiff has
failed to provide a sufficient causal link between the
Defendants' revenue and their alleged infringement.  Third and
finally, Anson's actual damages calculation is based on the fair
market value of the Defendants' brand rather than on the value
of a license for Bayoh's photographs.

    A.   Extraterritorial Infringement

    In calculating Afropunk's revenue over a four-year period,
Anson included revenue from festivals held abroad.  Assuming
that there will be an adequate evidentiary basis at trial to
support an award of damages based on Afropunk's infringement of
Bayoh's copyright through its domestic activities, he has not
shown that there can be any award based on revenue acquired from
its foreign festivals.[5]  It is "well established" that "copyright
laws generally do not have extraterritorial application."
Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 73 (2d Cir.
1988).  Despite that principle, Anson included Afropunk's

---

[5] At the initial conference in this case, the Court explained
that the plaintiff would not be able to recover from the
Defendants damages for any use of the plaintiff's photographs in
their foreign festivals.  The plaintiff has not explained why
that ruling was incorrect.

revenue from European and African festivals in his revenue
calculation.

B.   Defendants' Profits

The plaintiff has failed to identify any admissible
evidence that would tie any alleged infringement of Bayoh's
copyrights to Afropunk's revenues, much less all of Afropunk's
revenue over the course of four years and sixteen separate
festivals.  Anson has acknowledged that he is not providing any
opinion on causality.  Without a showing of "any causal
connection between the infringement and the defendant's
profits," Anson's testimony is irrelevant.  On Davis v. The Gap,
Inc., 246 F.3d 152, 159 (2d Cir. 2001).  Section 504(b) requires
that an award of an infringer's profits must be for profits
"that are attributable to the infringement."  17 U.S.C. §
504(b).

In opposition to this motion to exclude Anson's testimony,
Bayoh makes essentially two arguments.  He first asserts that
the plaintiff has met its burden of proof by showing that the
Defendants used his photographs in marketing materials and by
Anson's calculation of Afropunk's gross revenue at sixteen
festivals for a four-year period.  Bayoh contends that the
burden now shifts to the Defendants to show what portion of
their revenues should be excluded.  This includes the burden to

show the extent to which Afropunk relied on other photographers'
work in marketing materials, drew attendance because of the
performers who appeared at the festivals, or obtained revenue
through something other than ticket sales.  He asserts that
Anson was entitled to assume that Afropunk's use of Bayoh's
photographs was "encompassing" and "unfettered," terms that
Anson employed in his deposition.  Bayoh reasons that it is
"reasonable" to assume that viewing Bayoh's photographs in
Afropunk's marketing materials "could be a motivating factor"
for attending the festival and buying merchandise.

     Bayoh is incorrect.  He is asking the jury to engage in
speculation.  Without expert testimony explaining the basis for
a finding that all of Afropunk's revenue over a four-year period
is "reasonably related to the infringement," Davis, 246 F.3d at
160, Anson's calculation of Afropunk's gross revenues is
irrelevant and must be excluded as highly prejudicial.  Anson
does not purport to provide that analysis, and for the reasons
explained above, Wallace's testimony does not fill that gap.

     Since the Court of Appeals' decision in Davis, several
decisions in this district have rejected copyright plaintiffs'
efforts to shift the burden of showing causation (or the lack
thereof) to defendants.  See, e.g., Int'l Bus. Machines Corp. v.
BGC Partners, Inc., No. 10 CIV. 128 (PAC), 2013 WL 1775437, at

**4-5 (S.D.N.Y. Apr. 25, 2013) (granting defendant's motion in limine, finding no evidence of a causal nexus between the defendant's $100 million in profits and the plaintiff's software where the defendant's customers evinced no preference for the software); Granger v. Gill Abstract Corp., 566 F. Supp. 2d 323, 331-32 (S.D.N.Y. 2008) (granting defendants summary judgment on a damages claim premised on defendants' profits, concluding that plaintiff failed to show a causal link between the defendants' $766 million in profits and their alleged infringing use of the plaintiff's calculator program on its website); Mager v. Brand New Sch., No. 03 CIV. 8552 (DC), 2004 WL 2413978, at *4 (S.D.N.Y. Oct. 28, 2004) (granting defendant's summary judgment motion on a damages claim seeking its profits from a 44-minute television program, finding plaintiff had failed to show any causal connection between the infringing three seconds of the 44-minute broadcast and the profits gleaned from the program's broadcast).

These opinions have emphasized that the "copyright laws do not allow speculative recovery." Mager, 2004 WL 2413978, at *4. In cases that involve indirect profit claims, the district court opinions have underscored that "the decision to 'send[] such claims to a jury should be extremely rare'" given the "highly speculative nature of all indirect profits claims." BGC

Partners, 2013 WL 1775437, at *3 (quoting William F. Patry, Patry on Copyright § 22:131 (2010)).  As Nimmer notes, modern cases "more frequently deny profits" earned from advertising that incorporates infringing copyrighted material.  4 Nimmer on Copyright § 14.03 (2019).  Nimmer recites at length a decision by the Ninth Circuit, Mackie v. Rieser, in which the court explained that awarding profits from a concert series (when its brochure included an infringing photograph) invited speculation. 296 F.3d 909, 916 (9th Cir. 2002).  "Intuitively, we can surmise virtually endless permutations to account for an individual's decision to subscribe to the Pops series [which plaintiff's artwork advertised], reasons that have nothing to do with the artwork in question."  Id. (cited in 4 Nimmer on Copyright § 14.03 (2019)).  While it may be difficult for a plaintiff to establish the necessary causal connection between the infringing use and the defendant's gross revenues in a case involving indirect profits, "it is for this exact reason that the Copyright Act allows a plaintiff, under certain circumstances, to seek statutory damages."  Granger, 566 F. Supp. 2d at 332 n.9.

The few decisions in this district that have received evidence of indirect profits are easily distinguishable.  They found, on qualitatively different records, that the plaintiff

21

satisfied its burden to show causation.  In Craig v. UMG
Recordings, Inc., the defendant's music album covers featured
the plaintiff's photographs.  380 F. Supp. 3d 324, 328 (S.D.N.Y.
2019).  The court found that "the Photographs used in the
infringing albums are at the front and center of each album
sold."  Id. at 335.  Similarly, in Laspata DeCaro Studio
Coporation v. Rimowa GmbH, No. 16 CIV. 934 (LGS), 2018 WL
3059650 (S.D.N.Y. June 20, 2018), the photographs were on the
front cover of the defendant's lookbook for its luggage line,
the defendant's corporate press releases attributed that year's
33% increase in sales to the lookbook, and the images from the
lookbook were the only promotional images used in all worldwide
advertising by the defendant.  Id. at *7.

Second, Bayoh complains that the Defendants did not
cooperate sufficiently in discovery and that he was deprived of
the evidence he would need to show that all of Afropunk's
revenues were reasonably related to the use of his photographs.
He complains in particular that Afropunk's financial records
"were a mess."  As a result, it was "reasonable to assume all
festival income was for ticket sales."  He complains as well
that Afropunk did not supply complete documentation of the
graphics it used at each of its festivals or in marketing
materials.

The parties brought many of their disputes over discovery to the attention of the Court.[6]  Appropriate orders were issued to the plaintiff and to the Defendants to produce relevant materials.  Even though Afropunk is not a well-funded, sophisticated business enterprise, it was required to produce relevant materials.  There is no basis on this record to find that the plaintiff was wrongfully deprived of any records in the possession of Afropunk to which the plaintiff is entitled.  The informality of the Defendants' business operations did not relieve the plaintiff of its burden to establish causation.  This is particularly so when it seeks to meet that burden by simply calculating the entirety of Afropunk's gross revenues.

C.   Actual Damages

Anson calculated an increase in Afropunk's brand value and in his supplemental report characterized that calculation as a measurement of Bayoh's actual damages.  The value of Afropunk's brand is not a proxy for Bayoh's actual damages.

Ordinarily, actual damages are measured by the fair market value of a license covering an infringing use of the plaintiff's copyrighted works.  Davis, 246 F.3d at 172.  Bayoh has not offered any evidence, however, of the fair market value of a

---

[6] Indeed, the Defendants argued in September 2019 that the plaintiff's expert reports should be rejected in their entirety because they were untimely.

license for his photographs.  He explains that he has not done so because he does not license his photographs.  Even assuming that Anson has correctly calculated Afropunk's brand value, there is no basis for a jury to find that the fair market value of a license for Afropunk's brand represents the fair market value of a license for Bayoh's photographs.  This calculation is therefore irrelevant and its admission would confuse and mislead the jury.  See Fed. R. Evid. 403.

In opposing the motion to exclude Anson's use of Afropunk's brand value as the measure of Bayoh's actual damages, Bayoh mischaracterizes the Anson report.  He contends that Anson considered what Afropunk would have to pay Bayoh to use Bayoh's photographs in the manner in which it did, and that Anson concludes Afropunk would have had to pay Bayoh 6.1% of Afropunk's gross revenue or $4.4 million.  This is not an accurate description of Anson's analysis.

## Conclusion

The Defendants' October 16 motion to exclude Bayoh's expert testimony is granted.

Dated:    New York, New York
          October 26, 2020

_____
DENISE COTE
United States District Judge

24