Robert L. Greener, Esq.
LAW OFFICE OF ROBERT L. GREENER P.C.
112 Madison Avenue, 6th Floor,
New York, NY 10118
(646)415-8920 Phone
(212) 689-9680
rlg@greenerlegal.com
Attorney for Plaintiff MAMBU BAYOH


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————

MAMBU BAYOH.
                                    Plaintiff,
              v.
AFROPUNK FEST 2015 LLC, AFROPUNK LLC,
AFROPUNK GLOBAL INITIATIVE LLC., and
MATTHEW MORGAN, and JOCELYN COOPER
individually.
                                    Defendants.


———————————————————————————


**PLAINTIFF'S PRE-TRIAL MEMORANDM OF LAW**

i

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . .…..……..... 1

II.    STATEMENT OF FACT.…………………………………………………………1

III.   LEGAL STANDARD.………………………………………………………..2

IV.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. …......,,,,,,,,,,,,,5

A.  **Defendants are liabe for Copyright Infringement** ……………………………....…..5

B.  **Plainiff can establish Irreperable Harm in this Matter, Sufficient for the Court
     to grant and Injunction.………………………………………………………………6**

C.  **Failure To Grant An Injunction Will In Effect Give Defendants a Forced License
     In The Plaintiff's Photographs.…………………………………………...………12**

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .……........... . . ..13

# TABLE OF AUTHORITIES

**Statutes**                                                                                        **Pages**

Section 5 Copyright Act…………….....………………………………………………3

17 U.S.C. § 501(a)…………….………………………………..………………………3

17 U.S.C. § 502…………….………………………………………………………3

17 U.S.C § 106…………….……………………………………………………………7


**Cases**


Rovio Entm't, Ltd. v. Allstar Vending, Inc.,

97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015)…………………………………………………..….3

McGraw-Hill Global Educ. Holdings, LLC v. Khan,

323 F. Supp. 3d 488, 2018 U.S. Dist. LEXIS 104988, 2018 WL 3094922……………....…….…3

Barcroft Media, Ltd. v. Coed Media Grp.,

LLC, 297 F. Supp. 3d 339, 2017 U.S. Dist. LEXIS 182024………………………………….…4

Gener-Villar v. Adcom Group., Inc.,

560 F.Supp.2d 112 (D.P.R. 2008)……………………………………………………………….4

Madden v. Dreamworks,

2009 U.S. Dist. LEXIS 150535, *25……………………………………………………………...4

eBay Inc. v. MercExchange, L.L.C.,

547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641, 2006 U.S. LEXIS 3872,

78 U.S.P.Q.2D (BNA) 1577 (S. Ct. 2006). ……………….............................................................4

Salinger v. Colting,

607 F.3d 68, 77-78 (2d Cir. 2010)………………………….……...…………….……...5

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,

499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). ……………………………...….5

Fischer v. Forrest, 286 F. Supp. 3d 590, 2018 U.S. Dist. LEXIS

25923……………………………………………………………………………………..…….6

Halo Optical Prods. v. Liberty Sport, Inc.,

2016 U.S. Dist. LEXIS 20870, *9, 2016 WL 796069 (N.D.N.Y. 2016)[…………………..…...6


Roach v. Morse,

440 F.3d 53, 56, 2006 U.S. App. LEXIS 5407, *7-8 (2d. Cir. 2006)…..…………………….……6


Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,

82 F.3d 1533, 1996 U.S. App. LEXIS 10223, (10th Cir., 1999)………………..…………..……8


Perfect 10, Inc. v. Google, Inc.,

653 F.3d 976, 982 (9th Cir. 2011)……………………………………………………………...7


Apple Inc. v. Samsung Elecs. Co.,

735 F.3d 1352, 1363 (Fed. Cir. 2013)..………………………………………………..……..7


Jane Doe No. 1 v. Backpage.com, LLC,

817 F.3d 12, 29 (1st Cir. 2016)………………………………………………....….…7


WPIX, Inc. v. ivi, Inc.,

691 F.3d 275, 285, 2012 U.S. App. LEXIS 18155, *25, (2d. Cir., 2012)…………………...7


Rex Med. L.P. v. Angiotech Pharms. (US), Inc.,

754 F. Supp. 2d 616, 2010 WL 4977775, at *9-10 (S.D.N.Y. 2010). …………………..……...7


CJ Prods. LLC v. Snuggly Plushez LLC,

809 F. Supp. 2d 127, 145, 2011 U.S. Dist. LEXIS 94811, *19.………………….…...............8

New Era Publ'ns Int'l, ApS v. Henry Holt & Co.,

695 F. Supp. 1493, 1521, 1988 U.S. Dist. LEXIS 8700, *78, (S.D.N.Y., 1988) ………..…....…..9


Rauch Indus. v. Designs,

2011 U.S. Dist. LEXIS 174457, *13-14.. …………………………………..………..….…10


Steele v. Bell,

2014 U.S. Dist. LEXIS 44976, *22 (N.Y.S.D., 2014)…………………………………………...10


Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC,

679 Fed. Appx. 33, 2017 U.S. App. LEXIS 2539, 2017 WL 627494 (2d. Cir 2017)…….......10,11


Silverstein v. Penguin Putnam, Inc.,

368 F.3d 77, 2004 U.S. App. LEXIS 9006, (2d. Cir 2004)…………………………………...12


SimplexGrinnell LP v. Integrated Sys. & Power, Inc.,

642 F. Supp. 2d 167, 2009 U.S. Dist. LEXIS 30657, (S.D.N.Y. 2009)…………………………12


Eileen Grays, LLC v. Remix Lighting, Inc.,

2019 U.S. Dist. LEXIS 209445, (N.Y.N.D., 2019)…………………………………………..13


John Wiley & Sons, Inc. v. Book Dog Books, LLC,

327 F. Supp. 3d 606, 2018 U.S. Dist. LEXIS 139860, 2018 WL 3956508 (S.D.N.Y., 2018)…..13

## I. **PRELIMINARY STATEMENT.**

On November 11, 2020, the Court entered an Order (DCKT #168) requiring the parties to prepare pre-trial filings in advance of a potential trial on the question of issuance of a final injunction in this case.  Part of the order directed that Plaintiff may file a pre-trial memorandum of law with regards to the issue of irreparable harm only. Plaintiff files this memorandum in support of its application for a permanent injunction.

## II. **STATEMENT OF FACT**.

Plaintiff Mambu Bayoh ("Bayoh") respectfully submits this Memorandum of Law in support of his request for injunctive relief permanently restraining Defendants from using the Plaintiff's Photographic art work in advertising, marketing and promoting their Music festival Afropunk and associated events; and from using the works for the festival in any manner at the festivals themselves and in its promotional materials, banners, posters, media and books, social media, festival or corporate website and program guide; and/or offering for sale and selling various products and articles of clothing with images that infringe on Plaintiff's original Photographic works of art and any derivatives thereof; and further, against the individual defendants from using the photos in any manner, or for any purpose.

Plaintiff claims, except for a limited use in 2015, Defendants have unlawfully violated his copyrights, infringing on the photographic works by unfettered use of his photographs at their festivals.  Plaintiff claims his photos were used from 2015 until an injunction was entered in 2018 in the promotion, marketing, and advertising of the Afropunk festivals without his consent.  The festivals in question took place in Brooklyn, New York; Atlanta, Georgia; Paris, France: London,

1

England; and Johannesburg South Africa. This Court entered a preliminary injunction enjoying Defendants use of the photographs in question on July 11, 2018[1]

Plaintiff has already presented evidence to the Court, which supports his assertion that he directed Defendants in 2015 and 2016 not to use his photos and they intentionally failed to do as he asked. Instead, they continued using them for their music festivals in 2016, 2017 and 2018. In fact, they continued to use the photos up until very recently. This despite the fact that Plaintiff obtained a preliminary injunction enjoining continued use of the copyrighted photographic works. Thus, based on the history in this matter.

### III. LEGAL STANDARD

Section 5 of the Copyright Act grants an owner the right to seek out remedies from an infringer of the work under the Action. 17 U.S.C. 501(a), states that an owner of a Copyright shall have the right to pursue remedies against an infringer, and (b), states the owner shall have the right to maintain an action in the courts for those remedies under the act. 17 U.S.C. 502, grants an owner the right to seek out an injunction in a matter.

The Court has not dismissed Plaintiff's prayer for relief asking for a final injunction in the matter. "A court may issue such a permanent injunction based on its consideration of (1) the likelihood that plaintiff will suffer irreparable harm if an injunction is not granted; (2) whether remedies at law such as monetary damages are inadequate to compensate plaintiff for that harm; (3) the balance of hardships; and (4) whether the public interest would not be disserved by a permanent injunction." Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015) (citing Salinger v. Colting, 607 F.3d 68, 77-78 (2d Cir. 2010)). Injunctive relieve

---

[1] The order of preliminary injunction is attached as Exhibit "1" to the Greener Declaration

under the copyright act is one of the remedies that is available to a copyright owner under the copyright act. <u>McGraw-Hill Global Educ. Holdings, LLC v. Khan</u>, 323 F. Supp. 3d 488, 2018 U.S. Dist. LEXIS 104988, 2018 WL 3094922.   Thus, plaintiff has a right to pursue an injunction separate and apart from monetary damages. However, the grant of such an injunction is solely in the Court's discretion and subject to the rules of equity.

Here there is no doubt that Plaintiff will suffer harm if the Defendants are not enjoined. They have admitted to using the works and having done so extensively.  Plaintiff has alleged they continue to use his works through today. A preliminary injunction was already granted in the case, as the court found a probability of irreparable harm.  If defendants continue to use the photos as widely as they have in the past, at multiple festivals and extensively on the internet, Plaintiff will lose the right to control his images and the ability to monetize them. This will cause serious irreparable harm to Plaintiff. See, <u>Barcroft Media, Ltd. v. Coed Media Grp.</u>, LLC, 297 F. Supp. 3d 339, 2017 U.S. Dist. LEXIS 182024.

Further, as the Court has dismissed Plaintiff's experts there is almost no way possible at this time for Plaintiff to obtain actual damages or disgorgement of profit.  Thus, Plaintiff will not be able to obtain money damages in lieu of an injunction. The balance of hardship also goes to Plaintiff, as Defendants should not benefit from an infringement. Defendants themselves argue that Plaintiff's photos were a small part of their marketing, and they have a pool of other photographers to use.  So, they will not be harmed by being enjoined from using Plaintiff's works. An injunction would work in the public's interest as it would serve to prevent infringers like Defendants from approbating other photographer's' photographic works of art. Even where a copyright owner makes innocent mistakes in their copyright registration, and files supplemental registration, it would not deprive the owner from seeking remedies in Court. See, <u>Gener-Villar v.</u>

Adcom Group., Inc., 560 F.Supp.2d 112 (D.P.R. 2008). Madden v. Dreamworks, 2009 U.S. Dist. LEXIS 150535, *25.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641, 2006 U.S. LEXIS 3872, 78 U.S.P.Q.2D (BNA) 1577 (S. Ct. 2006), has changed the way Court approach injunctive relief.  Under the *eBay* standard irreparable harm is no longer assumed by a court, it must now be proven by the party seeking injunctive relief:

"A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. Id. at 547 U.S. at 391.

eBay, applied to Patent injunctions, however the standard has been expanded to include both Trademark and Copyright injunctions. Salinger v. Colting, 607 F.3d 68, 77-78 (2d Cir. 2010), adopted the eBay holding in the Second Circuit.

## IV.  ARGUMENT.

**A.      <u>Defendants are liable for Copyright Infringement.</u>**

To prevail on their claim of copyright infringement, plaintiffs must establish (1) ownership in a valid copyright, and (2) infringement of the copyright by defendant. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). In the case herein, Plaintiff is placed in an unusual situation where he must proceed forward on the issue of injunctive relief without having a trial on the issues, and with no opportunity for damages.  While in some respects this makes the case stronger for injunctive relief, in the normal course of a copyright infringement case Plaintiff would ordinarily seek the injunction after he had presented and proven a liability case for infringement. Yet, the Court Order of November 11th, was clear that this memo

(and accompanying papers filed along with the memorandum) must only address the question of irreparable harm to Plaintiff.

Regarding the two *Feist* factors, Defendants do not contest Plaintiff's ownership of the photos at issue herein. This issue was addressed in full as part of Defendants Summary Judgment Order, Plaintiff's opposition to Defendant's motion for Summary Judgement, and in the Court's January 15, 2020 Order denying summary judgment. Plaintiff submitted in the motion two registrations and two supplemental registrations which the court found to be valid. A certificate of copyright registration is prima facie evidence that the copyright is valid and that the work in question is copyrightable. So, the first prong of the *Feist* test is satisfied herein.

As for infringement, Defendants have admitted using the photographic works at the festivals from 2015-2018 but claim an implied in fact license which allegedly allowed their use. Plaintiff has argued that to the extent there was a license, it was very limited in scope. The uses of Plaintiff's works far exceeded the license agreed to. It is black letter law that a claim for copyright infringement lies when a party's use of copyrighted material exceeds the scope of its license, Fischer v. Forrest, 286 F. Supp. 3d 590, 2018 U.S. Dist. LEXIS 25923.

To do as the Court directs, given the circumstances of the case, it will be necessary then to assume liability on Defendants' part because without liability it is very difficult to address irreparable harm. However, in some cases it is possible to receive a final injunction without a prior finding of liability. See, Nimmer on Copyrights, §14.06(B)(2). Usually, irreparable harm can be determined after the record is fully developed in the case. ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits [for a preliminary injunction] rather than actual success [for a permanent injunction]") Halo Optical Prods. v. Liberty Sport, Inc., 2016 U.S. Dist.

5

LEXIS 20870, *9, 2016 WL 796069 (N.D.N.Y. 2016)[quoting <u>Amoco Prod. Co. v. Village of</u>

<u>Gambell</u>, 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987)].


**B.    Plaintiff Can establish Irreparable Harm in this matter, sufficient for the Court to grant an Injunction.**

"To obtain a permanent injunction, a plaintiff must succeed on the merits and "show the

absence of an adequate remedy at law and irreparable harm if the relief is not granted." <u>Roach v.</u>

<u>Morse</u>, 440 F.3d 53, 56, 2006 U.S. App. LEXIS 5407, *7-8 (2d. Cir. 2006). To obtain a permanent

injunction, a moving party must show that it will suffer irreparable harm that is causally

attributable to the challenged infringement.[2] See, <u>Perfect 10, Inc. v. Google</u>, Inc., 653 F.3d 976,

982 (9th Cir. 2011); <u>Apple Inc. v. Samsung Elecs. Co.</u>, 735 F.3d 1352, 1363 (Fed. Cir. 2013). A

"substantial likelihood" of continuing infringement is necessary to obtain permanent injunctive

relief, <u>Jane Doe No. 1 v. Backpage.com, LLC</u>, 817 F.3d 12, 29 (1st Cir. 2016).(" The court must

actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction

but ultimately prevails on the merits, paying particular attention to whether the remedies available

at law, such as monetary damages, are inadequate to compensate for that injury . . . .") <u>Salinger</u>,

607 F.3d at 80.  Here, the possibility of any monetary damages has been removed by prior orders

of the Court, even if Plaintiff were to prevail on its copyright infringement claims.  No other

remedy is available to compensate Plaintiff for past or future unauthorized use of the Plaintiff's

Photos. ("Harm may be irreparable where the loss is difficult to replace or measure, or where

---

[2] To be clear there are four factors which the Court must consider as part of the inquiry in a request for injunctive relief.  Those factors are set out in Point III.  As the District Court has directed the parties focus only on irreparable harm, one of the four factors, the other three will not be addressed directly but as they relate to irreparable harm.

6

plaintiffs should not be expected to suffer the loss…[citations omitted]" WPIX, Inc. v. ivi, Inc., 691 F.3d 275, 285, 2012 U.S. App. LEXIS 18155, *25, (2d. Cir., 2012).

A party can establish irreparable harm "if it shows that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." Rex Med. L.P. v. Angiotech Pharms. (US), Inc., 754 F. Supp. 2d 616, 2010 WL 4977775, at *9-10 (S.D.N.Y. 2010). What Plaintiff alleges is that the use Defendants have made and continue to make use of Plaintiff's photographs for their festival, which will cause irreparable harm in the event that defendants continue to be free to use the works in question. Plaintiff would lose the exclusive rights to use his work and exclude others from using them as well.[3] ("The Salinger standard for irreparable harm to plaintiff's property interest in the copyright context was based largely on the possibility of market confusion and the fact that proving "the loss of sales due to infringement is . . . notoriously difficult." Salinger, 607 F.3d at 81."), CJ Prods. LLC v. Snuggly Plushez LLC, 809 F. Supp. 2d 127, 145, 2011 U.S. Dist. LEXIS 94811, *19.

Plaintiff has provided evidence that the use of the photographs is so pervasive and intertwined into the fabric of Defendants Festivals to the extent that he has lost control over the works. This continued through until October 2020. As part of a pretrial filing, Plaintiff submitted examples of Defendants continued use of his photos despite the preliminary injunction[4]. In response, Defendants submitted a self-serving affidavit by Alan Lamb allegedly an employee of Afropunk LLC[5]. Mr. Lamb, who is neither an Officer nor a Director of Afropunk, represents to this Court that Afropunk can be trusted not to use the works in question because they have no

---

[3] 17 U.S.C. 106, sets forth the exclusive rights of copyright owners.
[4] DCKT #159-1, reproduced for the Court's convenience as Exhibit "2" in the Greener Declaration hereto.
[5] DCKT #160-1, reproduced for the Court's convenience as Exhibit "3" in the Greener Declaration hereto.

7

"desire, need, or economic incentive" to use the photos.[6]  Yet, prior to the Injunction in 2018, they made wide ranging use of the Photographic works at their festivals, in media placements, in sponsorship deals, and online despite Mr. Bayoh's admonishing them not to use the photos.[7]  Examples can be seen in Exhibit "C" to the amended Complaint.[8]

Stoppage of use by Defendants clearly was due to the injunction and not voluntary on their part.  Prior to the injunction Defendants made liberal use of the photographic work, something Mr. Morgan ( the founder of Afropunk) admitted to in his Deposition because as he stated, he felt he had the right to use the works. See also, Order of the Court dated Jan. 15, 2020, (DCKT #98).  However, the uses outlined in Document 159-1 are the same exact infringing uses outlined in the Amended Complaint. The infringements just continued in the same manner as before.  Defendants were on notice to remove the images from their social media accounts, they did not and still have not.  Clearly then Defendants cannot be trusted at their word to "police' themselves.

Mr. Lamb's representation is not believable as the content of his own Declaration proves, "While the Company is a small business with limited resources, it has engaged in reasonable good-faith efforts since this Court's injunction to periodically confirm or double-check that Bayoh's 28 images are not utilized on any social media or other online platform Afropunk controls and manages".[9] Yet, in paragraph 11, Mr. Lamb, despite claiming Defendants allegedly monitors their internet and social media accounts in good faith, goes on to detail how they seemingly missed an awful lot of uses.

---

[6] Mr. Lamb does not state in what capacity he can bind the Company to his statement as he lacks the status as an executive of the Defendant LLC

[7] See Order dated January 15, 2020 page 5, DCKT #98 reproduced for the Court's convenience as Exhibit "4" in the Greener Declaration hereto.

[8] DCKT # 21-3, reproduced for the Court's convenience as Exhibit "5" in the Greener Declaration hereto

[9] DCKT #160-1, page 2, paragraph 5.

8

Defendants admit the images detailed in Plaintiff's filing were found on the Afropunk controlled Facebook pages, and other social media accounts, yet for some reason these images continued to escape Afropunk's 'good faith' searches. In paragraph 11, A-Q of the Lamb Declaration, Mr. Lamb repeatedly states in a caveat that the images "may have been inadvertently missed during the review and removal process". One or two of the items could be considered inadvertent, but 15 to 20 cannot. ("'Isolated instance of minor infringements, when multiplied many times, become in the aggregate a major inroad on copyright that must be prevented.'") New Era Publ'ns Int'l, ApS v. Henry Holt & Co., 695 F. Supp. 1493, 1521, 1988 U.S. Dist. LEXIS 8700, *78, (S.D.N.Y., 1988) [Quoting, Harper & Row, Publrs. v. Nation Enters., 471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588, 1985 U.S. LEXIS 17, (S. Ct. 1985)]. These were but a sample of some of the violations found by Plaintiff.  If it were not for Plaintiff bringing these violations to the Court's attention, Defendants would not have acted to remove them.   This illustrates that Defendant Afropunk LLC cannot be relied upon self-monitor themselves or not to use the photos in the future.

Just the fact that these images are still out there as of October 2020 establishes the irreparable harm which will occur if Defendants are not enjoined.  ("Moreover, "in copyright actions, permanent injunctions generally are granted when there is a threat of continuing violations.") Rauch Indus. v. Designs, 2011 U.S. Dist. LEXIS 174457, *13-14. [Quoting Masterfile Corp. v Country Cycling & Hiking Tours by Brooks, Inc., No. 06 Civ. 6363, 2008 WL 313958, at *5 (S.D.N.Y. 2008)]; ("In intellectual property actions, permanent injunctions are normally granted when there is "a threat of continuing violations.") Steele v. Bell, 2014 U.S. Dist. LEXIS 44976, *22 (N.Y.S.D., 2014)

Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC, 679 Fed. Appx. 33, 2017 U.S. App. LEXIS 2539, 2017 WL 627494 (2d. Cir 2017), is a liable case reviewed by the Second Circuit with an injunction issue like the one in the present case.  In *Romeo & Juliette*, the lower court had issued a permanent injunction against the defendant Assara, even though at the time of trial the defendant had ceased the injurious activity, claimed to be out of business and represented to the Court it would refrain from similar future activity. Based on the history in the case, the District Court granted an injunction against defendant Assara anyway, enjoining them from continuing the injurious activity in the future. Assara appealed, arguing that the Plaintiff did not demonstrate irreparable harm as required. Assara claimed to have ceased the injurious activity prior to trial and were no longer in business. Therefore, Plaintiff could not show future harm to warrant a permanent injunction and it was granted in error.

Why this case is applicable to the current matter is that the Second Circuit upheld the lower court's grant of the injunction, and in so holding, stated the lower court did not have to accept the self-serving representation from defendant that it would not continue the injurious activity in the future. The Court observed, given the previous history in the case, there was nothing to prevent defendant from starting up again and continuing their injurious activity absent the injunction. Like the Defendant in *Romeo & Juliette*, Afropunk, could easily continue its activity since they are an ongoing business with archives full of graphic designs utilizing Plaintiffs photos which could easily be reincorporated into their concert production, marketing and promotion at any point in the future. If ultimately there is no penalty issued against Defendants for their infringement of Plaintiff's copyright, such a scenario becomes highly likely, requiring Plaintiff to engage in another expensive and time-consuming litigation.

*Romeo & Juliette*'s holding raised another issue which is also applicable to this case as well.  Part of the relief fashioned by the District Court injunction in *Romeo & Juliette* was that any transferees and assigns for defendants' business were also enjoined. This extension was appealed as being too broad a proscription but was affirmed by the Circuit Court noting that injunctions could be extended to successors and assigns as a means to prevent circumvention.  The Court also noted that this applies to others who act in concert with the infringer ("deeming injunctions binding against those "in active concert or participation" with named parties"). Romeo & Juliette Laser Hair Removal, Inc., id. at 37.  Here, there were numerous third parties who acted with Defendant in the production and marketing of the festivals.

Mr. Lamb himself admits in his Declaration that Afropunk partners used the images. One was Soundcloud, a digital music website and the musical artists Public Enemy. He states, Afropunk has no control over these parties and cannot be responsible for them.  Mr. Lambs deflection begs the question that these partners would not have the images in the first place if not for Afropunk's giving access to them. This points to the fact absent an injunction Afropunk could easily skirt their representation to the Court by joining with third parties to market merchandise or promote Afropunk using Plaintiff's images.  This was done before, with beverage companies, liquor companies and shoe manufacturers and there is no reason to believe this will not occur again. Afropunk could then avoid liability by merely pointing the finger at someone else.

Then there is the question of the legacy aspect of Afropunk's use of the photographic works. Detailed in the Exhibit "C" to the Complaint are a variety of examples of Plaintiff's uses of the Copyrighting works.  Many of these photos appeared on banners around the festival site, and on signage and staging for the musical acts during the Concert.  As Defendants have claimed in multiple documents filed with this Court, numerous photographers have photographed the

11

festival. These are legacy photos from the past five years of festival history. Plaintiff's photographs are ingrained into this legacy and history. Defendant can choose to use these historical photos for future marking and promotion of festivals to come. It is impossible to separate the Plaintiff's works out. If Defendants are not enjoined from using these photos, one day in the future, they will surface again.

## C. **Failure to grant an injunction will in effect give Defendants a forced license in the Plaintiff's photographs.**

Courts in this Circuit have held that an injunction should issue if the failure to grant one would in effect be a forced license for Defendant to use the creative work of the Plaintiff. See, Silverstein v. Penguin Putnam, Inc., 368 F.3d 77, 2004 U.S. App. LEXIS 9006, (2d. Cir 2004), SimplexGrinnell LP v. Integrated Sys. & Power, Inc., 642 F. Supp. 2d 167, 2009 U.S. Dist. LEXIS 30657, (S.D.N.Y. 2009), and Eileen Grays, LLC v. Remix Lighting, Inc., 2019 U.S. Dist. LEXIS 209445, (N.Y.N.D., 2019). Defendants have admitted extensive use of the Plaintiff's photographs from at least June 2015 till August 2018.

Defendants used exact copies of Plaintiff's photographs which all parties admit they received from Plaintiff directly. So, without permission Defendants would not have any entitlement to use the photos in questions. As a defense to this claim, Defendant have argued Afropunk was granted an implied in fact license authorizing it to unlimited use of Plaintiff's photographs. A failure to grant a permanent injunction would be tantamount to a judicial recognition of Defendants claims and thus the granting of a judicial license to Defendants to continue to use the works in the future. ("[i]n the copyright realm, it has been said that an injunction should be granted if the denial would amount to a forced license to use the creative work of

12

another.") <u>Silverstein v. Penguin Putnam, Inc.</u>, id. at 368 F.3d 84. If this were to happen, it would destroy the exclusivity of the Plaintiff's copyrights granted to him under the copyright act and therefore irreparable harm Mr. Bayoh.  In order to preserve Plaintiffs rights the Court needs to issue a final injunction in this case.( "In many instances, injunctive relief may be the best or only way to preserve the exclusivity of a copyright."), Id. See also, <u>John Wiley & Sons, Inc. v. Book Dog Books,</u> LLC, 327 F. Supp. 3d 606, 2018 U.S. Dist. LEXIS 139860, 2018 WL 3956508 (S.D.N.Y., 2018)

To grant a permanent injunction would not harm the Defendant as is freely admitted in the Lamb Declaration.  Afropunk represented to this court that it has no need or use of the photographs. Defendant will still be able to produce, market and promote their festivals, all without use of Plaintiffs photographs. Therefore, Defendant will suffer no damage or prejudice by being enjoined from future use of the Photographs in any manner or in any format. So, the balance of equity here should go to Plaintiff to prevent Defendant from future use, otherwise it will result in a compulsory license.

### Conclusion

For all of the reasons stated above the Court should grant a permanent injunction enjoining Defendants, their assigns or successors, and third party collaborators from using any of Plaintiff's photographic works for any reason, and in any manner, in any format or medium of expression now known or developed in the future; and further that Defendants be required to remove plaintiff's photographic works from any website, internet site or social media account to

13

which Defendants have access, dominion or control over either directly or through a third party

agent or collaborator; along with any further relief that this Court deems just and proper.

Dated:  November 20, 2020.

Respectfully submitted,

ROBERT L. GREENER

LAW OFFICE OF ROBERT L. GREENER (8089)
*Attorney for Plaintiff*
112 Madison Avenue, 6th Floor
New York, NY 10118
(646) 415-8920
(212)689-9680

14