UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
 MAMBU BAYOH,                          :
                                       :
                        Plaintiff,     :        18cv5820
                                       :         (DLC)
              -v-                      :
                                       :        OPINION AND
 AFROPUNK LLC, MATTHEW MORGAN and      :        ORDER
 JOCELYN COOPER, individually,         :
                                       :
                        Defendants.    :
                                       :
-------------------------------------- X

APPEARANCES

For plaintiff Mambu Bayoh:

Robert Leslie Greener
Robert L. Greener, Law Office
112 Madison Avenue, 6th Floor
New York, NY 10118

For defendants Afropunk LLC, Matthew Morgan, and Jocelyn Cooper,
individually,

Jonathan D. Goins
Brian Pete
Devin S. Cohen
Lewis Brisbois Bisgaard & Smith LLP
77 Water Street
21st Floor
New York, NY 10005

DENISE COTE, District Judge:

     In an Order of November 11, 2020, this Court scheduled a

bifurcated non-jury trial on the plaintiff's request for a

permanent injunction.  The first phase of the trial, scheduled

for December 17, is to be held on the issue of the plaintiff's

irreparable injury.  If the plaintiff were able to show
irreparable harm on December 17, a second phase of the trial
would allow the plaintiff to present the remaining evidence
necessary to obtain a permanent injunction.  For the following
reasons, the December 17 trial is cancelled and the plaintiff's
request for a permanent injunction is denied.

## Background

Plaintiff Mambu Bayoh was hired by defendant Afropunk in
2015 to provide photographs that could be used in connection
with the 2015 Afropunk music festival in Brooklyn, New York.
Bayoh was paid $1,200 and provided twenty-eight photographs.
The parties almost immediately disputed the scope of the license
Bayoh had granted Afropunk.

Bayoh applied for copyright protection for the twenty-eight
photographs in June 2017 and July 2018.  On June 27, 2018, he
filed this lawsuit, seeking damages and injunctive relief, for
the alleged infringement of his copyright in the photographs.
Because of his delay in seeking registration, Bayoh has lost the
right to seek statutory damages or attorneys' fees for any
infringement he may be able to prove.  A preliminary injunction,
which was unopposed, issued on July 11, 2018.  The defendants
had not yet appeared in this action.

Bayoh amended his registrations with the Copyright Office in August 2019, correcting the dates on which he had first published the photographs.  The Court has agreed that Bayoh may proceed with this lawsuit despite his errors in his initial registrations.  Bayoh v. Afropunk Fest 2015 LLC, No. 18CV5820 (DLC), 2020 WL 229978, at *5 (S.D.N.Y. Jan. 15, 2020).

Following the close of discovery, a jury trial was scheduled for November 2, 2020.  In advance of the trial, the parties filed a pretrial order.  In that document, the plaintiff sought damages but not injunctive relief.

At the final pretrial conference on October 22, the plaintiff explained that in addition to providing his own testimony, he would call three witnesses to testify at trial: a former employee of the defendants, Andrea Dwyer, and two experts who would provide his sole evidence regarding damages.  Because the plaintiff is not a commercial photographer and had never licensed his photographs, he had no evidence to provide of actual damages.  The plaintiff's experts were to provide evidence of the defendants' unlawful profits from their use of the plaintiff's photographs.

On October 26, 2020, the defendants' motion to preclude the plaintiff's experts' testimony was granted.  Bayoh v. Afropunk LLC, No. 18CV5820 (DLC), 2020 WL 6269300, at *1 (S.D.N.Y. Oct.

3

26, 2020).  With that decision, the plaintiff no longer had any

proof of damages to offer at trial and lost the right to a jury

trial.[1]  Later that day, the Court issued an Order asking the

parties to address whether this action should not be dismissed

in its entirety.

On October 27, in his response to the October 26 Order,

Bayoh asserted -- for the first time since he filed his Amended

Complaint -- that he would be seeking a permanent injunction.

He also moved to hold the defendants in contempt of court for

allegedly violating the preliminary injunction.  In support of

his motion, Bayoh attached a forty-page exhibit containing

screenshots of various alleged continued uses of his photographs

by Afropunk.  At a conference on October 30, the Court discussed

with the parties whether further proceedings were necessary and

whether Bayoh had preserved his right to pursue a permanent

injunction, asked them to confer, and requested their positions

by November 10.

In the parties' November 10 letter, the plaintiff sought a

schedule for a new pretrial order addressed to his request for

permanent injunctive relief, noting that the "old pretrial

---

[1] The Southern District of New York conducted nine jury trials in
the fall of 2020, before once again suspending jury trials
because of the COVID-19 pandemic.  The parties were notified on
October 20 that their jury trial would proceed on November 2.

order" was no longer relevant and observing that this Court's

practices in non-jury trials are different from those that

govern jury trials.  Afropunk argued, among other things, that

the plaintiff would be unable to prove irreparable harm, which

is an essential element of any claim for permanent injunctive

relief.  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391

(2006).  It also indicated an intention to file a motion to

vacate the preliminary injunction issued on July 11, 2018.

     Over the defendants' objection, in an Order of November 11,

the Court permitted the plaintiff to seek injunctive relief

despite his omission of any request for such relief in the

pretrial order.  The Order set a schedule for the motion to

vacate the preliminary injunction and scheduled a bifurcated

non-jury trial addressed solely to the issue of irreparable

harm, that trial to be held on December 17.  The parties were

required to serve affidavits constituting the direct testimony

of their witnesses, except for testimony of an adverse party, a

person whose attendance must be compelled by subpoena, or a

witness for whom a party had requested, and the Court had agreed

to hear, the direct testimony at the trial.  No party thereafter

requested and no permission has been given for direct testimony

to be presented at the trial by a witness.  The Order also

provided for the submission of trial exhibits, memoranda of law

and proposed findings of fact and conclusion of law.  The
plaintiff's submissions were due November 20 and the defendants'
on December 2.  Finally, the Order required the parties to
advise the Court by December 4 "whether the trial may be
conducted solely through the Court's consideration of the trial
evidence submitted on November 20 and December 2, or whether
either party requests an opportunity to cross-examine
witnesses."

The plaintiff's November 20 submissions provided no
evidence of any irreparable harm.  Neither his findings of fact
nor memorandum of law describe any irreparable harm that he has
suffered, is suffering, or will suffer if an injunction is not
entered.  This is not surprising, since Bayoh is not in the
business of offering for sale or licensing photographs.  His
November 20 arguments and three documentary exhibits he
submitted on November 20 are addressed below.

In a December 4 submission the parties disagree as to
whether a trial on irreparable harm is required.  The plaintiff
asserts that he has the right to testify and to call Ms. Dwyer
as a witness even though he submitted no affidavit from either
witness on November 20 and never sought permission from the
Court to have them testify without having made such a
submission.  Counsel for the plaintiff contends that his having

named them (along with seven other witnesses) in the pretrial

order prepared for the jury trial was sufficient.  It was not.

The plaintiff acknowledged in the parties' November 10 letter

that this Court's procedures for non-jury trials are different

than its conduct of jury trials.  The November 11 Order was

abundantly clear about what was required.  In any event, nothing

in any of the plaintiff's November 20 submissions suggests that

either the plaintiff or Ms. Dwyer has any evidence to provide

regarding irreparable harm.[2]  Given the plaintiff's failure to

provide any affidavit constituting the direct testimony of any

witness (or to seek permission not to do so), the defendants

contend that a trial on irreparable harm is not necessary.  They

are correct.

   The remainder of this Opinion will address the standard for

the issuance of an injunction, including the requirement of

evidence of irreparable harm, as well as the arguments and

documentary evidence submitted by the plaintiff on November 20.

---

[2] The plaintiff's November 20 submission only briefly touches
upon the issue of irreparable harm.  Most of the plaintiff's
November 20 submission is addressed to the claim of infringement
and the scope of the license he granted Afropunk.  There is no
discussion in the plaintiff's memorandum of law or proposed
findings of fact and conclusions of law to suggest that either
Bayoh or Ms. Dwyer have any evidence to offer regarding
irreparable harm.

## Discussion

"The decision to grant or deny permanent injunctive relief
is an act of equitable discretion by the district court,
reviewable on appeal for abuse of discretion."  eBay Inc. v.
MercExchange, L.L.C., 547 U.S. 388, 391 (2006).  While a
copyright holder "possesses the right to exclude others from
using his property," a permanent injunction does not
"automatically follow[] a determination that a copyright has
been infringed."  Id. at 392-93 (citation omitted).

In order to obtain a permanent injunction, a plaintiff must
demonstrate "(1) that it has suffered an irreparable injury; (2)
that remedies available at law, such as monetary damages, are
inadequate to compensate for that injury; (3) that, considering
the balance of hardships between the plaintiff and defendant, a
remedy in equity is warranted; and (4) that the public interest
would not be disserved by a permanent injunction."  eBay Inc. v.
MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

"Harm might be irremediable, or irreparable, for many
reasons, including that a loss is difficult to replace or
difficult to measure, or that it is a loss that one should not
be expected to suffer."  Salinger v. Colting, 607 F.3d 68, 81
(2d Cir. 2010).  In the copyright context, "the harm to the
plaintiff's property interest has often been characterized as

irreparable in light of possible market confusion. . . . And courts have tended to issue injunctions in this context because to prove the loss of sales due to infringement is . . . notoriously difficult." Id. (citation omitted). In addition, a permanent injunction "ordinarily is not granted absent any threat of continuing or additional infringements," 4 Nimmer on Copyright § 14.06 (2020). Rather, "there must be some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." Bowater S. S. Co. v. Patterson, 303 F.2d 369, 371-72 (2d Cir. 1962) (citation omitted). Finally, if a party delays in seeking a permanent injunction, then a permanent injunction is likely not warranted. World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 161 (2d Cir. 2012).

Bayoh asserts in his memorandum that the defendants will cause him irreparable harm "in the event that [they] continue to be free to use" his twenty-eight photographs. In support of that assertion, Bayoh submitted three exhibits.[3] One exhibit is thirty-nine screenshots apparently taken on May 22 and September 9, 2020. Roughly twenty-eight of these screenshots appear to be taken of Afropunk's website and social media accounts. The

---

[3] Bayoh also attached a court order and an opinion, as well as a short list of bullet point arguments about certain depositions.

remainder appear to come from third-party musicians' social media accounts and third-party search engine results.[4]  Someone has circled each of Bayoh's photographs as they appear in the screenshots.[5]

The next exhibit is a set of pages that were attached to the August 17, 2018 amended complaint.  It consists of photographs of Afropunk promotional brochures from 2015 and 2017,[6] of an Afropunk t-shirt, and of posters displayed at an Afropunk festival; screenshots of Afropunk's mobile app, email marketing materials, and social media accounts; and a screenshot from a third-party search engine.  Bayoh's photographs are circled in red as they appear in these pages.  Neither of these two exhibits suggests that Afropunk has posted or added Bayoh's photographs to these materials or on these pages after the preliminary injunction was entered on July 11, 2018.

Plaintiff's third exhibit is an October 27, 2020 affidavit by Afropunk employee Allen Lamb ("Lamb Affidavit").  Lamb represents that Afropunk is a small company with limited

---

[4] Afropunk does not, of course, have control over third-party social media accounts and search engines.

[5] Several of the screenshots appear to be duplicates, and several pages of the exhibit are blank.  Additionally, the image resolution of the screenshots is very low, and it is difficult to accurately discern all of their contents.

[6] The 2017 brochure is from an Afropunk South Africa festival.

resources, that it took steps after the preliminary injunction
was issued to confirm that Bayoh's twenty-eight images are not
utilized on any social media or other online platform that
Afropunk controls, and that the first time following the
issuance of that 2018 injunction that plaintiff's counsel
notified Afropunk that Bayoh's images continue to be displayed
on those platforms was October 27, 2020.  Lamb represents that
any continued display was inadvertent and that Afropunk will
conduct a search and remove any images that have continued to be
displayed on sites it controls.  Lamb reaffirms that Afropunk
has not offered for sale or sold any tickets or merchandise
through the use of Bayoh's images.  He concludes his affidavit
with the statement that Afropunk has "no desire, interest, need
or economic incentive to use any of Plaintiff's 28 images."

Even if the photographs and screenshots that Bayoh has
submitted were admissible without authentication, they suggest
at best that Afropunk failed in its effort to remove all of
Bayoh's photographs from its website and social media accounts
after the preliminary injunction issued.  They do not suggest
that Afropunk has continued to post Bayoh's photographs on
platforms it controls.  Plaintiff's failure to bring this
continued display of his works to either this Court's attention
or Afropunk's attention for more than two years after the

preliminary injunction issued suggests that this continued use caused Bayoh no injury during that interval.

This lack of injury is not surprising.  As already discussed, Bayoh has explained that he is not a commercial photographer and does not license his photographs.  He has not experienced, therefore, a loss of sales and has offered no evidence that he has suffered any financial injury at any time from Afropunk's alleged extra-license use of his photographs.

Bayoh's memorandum of law argues that he has suffered irreparable harm because "the possibility of any monetary damages has been removed by prior orders of the Court."  This statement mischaracterizes the record.  Had Bayoh timely registered his photographs with the Copyright Office, he would have had the option of seeking statutory damages and attorneys' fees.  See 17 U.S.C. § 412; Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 158-59 (2d Cir. 2007).  And, had Bayoh suffered any actual damages, he could have attempted to recover those damages at the scheduled jury trial.  An award of a permanent injunction is not an appropriate remedy to fill this gap.

Additionally, Bayoh has not shown that there is a "danger of recurrent violation, something more than the mere possibility which serves to keep the case alive."  Bowater S. S. Co. v. Patterson, 303 F.2d 369, 371–72 (2d Cir. 1962) (citation

omitted).   The Lamb Affidavit suggests that the exact opposite
is true.

Finally, the fact that Bayoh "delay[ed] in seeking a
permanent injunction" weighs against a finding that he was
irreparably harmed.  World Wide Polymers, Inc. v. Shinkong
Synthetic Fibers Corp., 694 F.3d 155, 161 (2d Cir. 2012).
Although he requested permanent injunctive relief in his amended
complaint, Bayoh made no mention of that request again until his
effort to seek Afropunk's profits failed.  His October 16, 2020
pretrial order did not identify injunctive relief as an issue
for trial.  Only after the evidence from his damages' experts
was excluded did he resurrect this request.

Similarly, the tardiness of Bayoh's complaints about the
defendants' alleged violations of the preliminary injunction
counsels against a finding of irreparable harm.  Bayoh waited
until October 27, 2020 -- over two years after the preliminary
injunction first issued on July 11, 2018 -- to raise the issue
of the defendants' alleged continuing violations.

Bayoh has failed to demonstrate that Afropunk irreparably
harmed him in any way.  Additionally, he has produced no
evidence that he has been irreparably injured by the two
individual defendants.  He has offered no evidence that either
ever posted his photographs to their individual social media

accounts, and their employment with Afropunk ended months ago.
Accordingly, it is unnecessary to hold a non-jury trial on the
remaining elements of Bayoh's request for a permanent
injunction.

## Conclusion

The non-jury trial scheduled for December 17, 2020 is
cancelled.  The plaintiff having failed to offer evidence of
irreparable harm, his request for a permanent injunction is
denied.

Dated:    New York, New York
          December 11, 2020

_____
DENISE COTE
United States District Judge